JOHN M. FRANCIS AND HENRY O'R. TUCKER, PLAINTIFFS, *v.* THE CITY OF TROY, DEFENDANT.

*City of Troy — powers of common council — city advertising — notices of tax sales.*

The charter of the city of Troy confers upon it the right to collect taxes. *Held,* that the power to determine the extent to which notices of sale of property for non-payment of taxes should be published was conferred upon the city as incidental thereto.

The charter authorized the common council to appoint four official papers "in which the city advertising" should be done. *Held,* that the notices of sale of property for non-payment of taxes was city advertising within the express language of the charter.

The charter requires the chamberlain to publish such notices in two of the official papers. *Held,* that this did not affect the right of the common council to direct their publication in the two other official papers. (LEARNED, P. J., dissenting.)

SUBMISSION of a controversy without action, pursuant to section 372 of the Code of Procedure.

The plaintiffs being the publishers and proprietors of the Troy Daily Times presented to the city of Troy a bill for $266.25, properly made out and verified, for publishing in said newspaper the city chamberlain's list or statement of unpaid taxes and assessments and notice of sale for non-payment once a week, for six weeks successively, commencing May 1, 1876.

The defendant refused to pay the bill, on the ground that the publication in the Times was unauthorized by the chamberlain of the city and, therefore, not a valid obligation against the city.

On the 1st day of May, 1876, the said list or statement was published by the express direction of Benjamin H. Hall, the chamberlain of said city, under and in accordance with section 13, title 5 of the charter of the city of Troy, in two daily newspapers published in the city of Troy, to wit, the Troy Daily Press and the Troy Morning Whig, which said publication continued for six weeks.

The chamberlain did not direct or authorize the publication of his said list or statement in the Troy Daily Times.

When such publication commenced, and from that time to the present, the official newspapers of the city, as designated by the common council, consisted of the before-mentioned Press, Whig and Times and a weekly paper known as the Troy Northern Budget. The designation of these newspapers for this year by the common council was made on the 14th of March, 1876.

On the 4th of May, 1876, the common council formally adopted a resolution, directing all the advertisements and official notices emanating from the chamberlain and other heads of city departments to be published in all the official papers of the city.

*Robertson & Foster*, for the plaintiffs.

*R. A. Parmenter*, for the defendant.

BOARDMAN, J. :

Municipal corporations possess no powers but those expressly granted, those necessarily or fairly implied, those incident to the powers granted, and those essential to the objects and purposes of the corporation. (1 Dillon on Corp., § 55.) The power to collect

taxes is expressly given. The extent to which notices of sale of property for that purpose shall be published is incidental to that power. The object of the corporation is to secure the payment of its taxes. Whatever means may directly contribute to that result, may be employed as an incident to the power expressly conferred; in that view a publication of the notice of taxes unpaid might be published by the defendant under the incidental powers conferred by the charter.

But by Laws of 1873 (chap. 813, end of § 3, p. 1220) express authority is given to the common council to designate not exceeding four official papers having the largest circulation in the city "in which the city advertising shall be done only on the order of the common council." The notices issued and published by the plaintiffs in this case were plainly city advertising, and within the express language of the charter. The action of the common council in ordering the publication in plaintiffs' paper, which was one of the four papers designated as official papers, was therefore authorized. I conclude, therefore, that the city was bound to pay for this advertisement the amount claimed, because the city, by its proper authorities, had ordered the plaintiffs to publish the same, and because such order was justified by the express language of the charter. In the absence of such express grant of power, I think the ordering of such publication was an incident to the power of collecting the city taxes, and for that reason might be legally exercised.

The fact that the services were partly rendered, prior to the passage of the resolution of the common council, will not avoid the defendant's liability. The resolution was a ratification of plaintiffs' act, and an adoption of their services sufficient to establish the liability of the city. It is possible the designation of the plaintiffs' paper, as the official paper, on the 14th of March, 1876, was a sufficient order to justify the publication of the notice, as city advertising under the charter.

The chamberlain of the city is required to publish the same notice in two daily papers of the city. This was done, but plaintiffs' paper was not one of them. I do not think the obligation imposed upon the chamberlain has any thing to do with the question for our decision. It is not necessary for us to decide whether the expense

incurred by the common council can be added to that incurred by the chamberlain and charged against the property taxed to be paid by the tax-payer upon a redemption.

The plaintiffs' paper was one of the official papers of the city. It was such a paper as the charter required the tax lists to be published in. The tax list was city advertising; the tax lists or notices were published in plaintiffs' paper. The common council authorized and ratified such publication. The charter, fairly construed, authorizes such action of the common council.

It follows that the plaintiffs are entitled to recover of the defendants the sum of $266.25, besides costs and disbursements, and judgment is ordered accordingly.

BOCKES, J., concurred.

LEARNED, P. J. (dissenting):

The only question is whether the authority given to the common council to designate four papers in which the city advertising shall be done, and their resolution directing all advertisements and official notices to be published in all the official papers, make the city liable to pay the plaintiffs for this work. Or whether, on the other hand, the provision as to the chamberlain's designation of two papers is to be held to restrict the publication to those two.

I think that in speaking of " city advertising " in title 2, section 3, the legislature must have referred to that large amount of necessary advertising for which no special provision was made. But in respect to the publication of the tax lists, a special provision was made. The power of designating the papers was given to the chamberlain. They were to be daily papers, while the official papers need not be daily papers. The purchaser was to pay the amount of the tax, interest and advertising, so that the expense of advertising was to become a lien on the land. There was, therefore, a good reason for limiting the amount of expense which should thus be incurred.

The provision of advertising in two daily newspapers is found in several places throughout title 4, which treats of the collection of taxes. And it seems to be part of a system on this subject, that all the notices connected with the collection of taxes should be pub-

lished in that number of daily newspapers, to be selected by the chamberlain.

It is reasonable, then, to understand that the authority given in a previous title to the common council, to designate not to exceed four newspapers in which the city advertising should be done, was not intended to override the subsequent provisions relative to the collection of taxes. The common council are not obliged to designate more than one paper, and that may be a weekly. Evidently such designation would not interfere with the chamberlain's duty as to taxes.

It is to be noticed also, that title 2, section 3, does not declare that all the city advertising shall be done in all the papers designated by the common council. It only declares that in these papers the advertising shall be done " only on the order of the common council." It was then such advertising as was not otherwise provided for by definite requirements of law, that the common council were to order to be done in official papers. It may be said that, although the common council need have made no order, yet, as they have ordered the publication, and it has been done, the city must pay. That of course depends entirely upon the question whether this publication by the chamberlain was a matter within the authority of the common council or not. If, as it seems to me, they had nothing to do with it, then it was nugatory for them to order the additional publication. The charter gave full notice to every one of the extent of their power, and showed that this was beyond it.

I think that the defendants should have judgment.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment ordered for plaintiffs.